IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SEIKO EPSON CORPORATION,
a Japan corporation; EPSON AMERICA,
INC., a California corporation; and EPSON
PORTLAND INC., an Oregon corporation,

               Plaintiffs,

     v.

ADVANCE IMAGE MANUFACTURERS,
INC., a Pennsylvania corporation,

               Defendant.

Case No. 3:17-cv-00425-YY

ORDER ON PERSONAL
JURISDICTION, DEFAULT
JUDGMENT, AND PERMANENT
INJUNCTION

Plaintiffs have brought claims against defendant Advance Image Manufacturers, Inc.

("AIM") for infringement of its patents related to inkjet cartridges. On January 17, 2018, an

order of default was filed against AIM. ECF #21. Plaintiffs subsequently filed a Motion for a

Finding of Personal Jurisdiction, Default Judgment, and Permanent Injunction. ECF #28. For

the reasons set forth below, the motion is granted, and a default judgment and permanent

injunction are ordered.

## PERSONAL JURISDICTION

A default judgment rendered by a court that lacked personal jurisdiction over the

defendant is void. *See, e.g.*, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456

U.S. 694, 706 (1982). Thus, as a preliminary matter, this court determines whether it has

personal jurisdiction over AIM. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012).

Page 1 - ORDER ON PERSONAL JURISDICTION, DEFAULT JUDGMENT, AND
PERMANENT INJUNCTION

"In patent cases, Federal Circuit law governs whether personal jurisdiction exists when the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1347 (Fed. Cir. 2016) (quoting *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012)). The court considers two factors in determining whether personal jurisdiction exists over an out-of-state defendant in a patent-related dispute: "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir.1997). Here, these "inquiries merge because Oregon's long-arm statute extends jurisdiction 'to the outer limits of due process.'" *Ali v. Carnegie Inst. of Washington*, 967 F. Supp. 2d 1367, 1376-77 (D. Or. 2013) (quoting *State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 657 P.2d 211 (1982)); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (holding that the two inquiries collapse into a single inquiry when state long-arm statute is coextensive with the limits of due process).

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotation marks and citation omitted). Due process requires only that an out-of-state defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Otherwise stated, the Due Process Clause requires a court to determine whether a defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Under the "minimum contacts" test, "a defendant may be subject to either specific jurisdiction or general jurisdiction." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). Plaintiffs contend only that this court has specific personal jurisdiction over AIM. The court has specific personal jurisdiction when "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal quotation marks and citations omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted).

The court analyzes specific personal jurisdiction under a three-prong test: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Polar Electro*, 829 F.3d at 1348. "The first two factors correspond with the minimum contacts prong of the *International Shoe* analysis, and the third factor corresponds with the fair play and substantial justice prong of the analysis." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009). The plaintiff bears the burden of establishing "minimum contacts." *Polar Electro*, 829 F.3d at 1348. The defendant bears the burden of proof on the last prong, and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test set forth in *Burger King*. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d at 1363.

A plaintiff may satisfy its burden of establishing sufficient minimum contacts by demonstrating a defendant targeted the forum state through a stream of commerce. *Polar*

*Electro*, 829 F.3d at 1348-52; *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994). Although the Supreme Court's stream-of-commerce theory of personal jurisdiction remains unsettled, the Federal Circuit has held that satisfying the more stringent requirements of the stream-of-commerce test establishes that a non-resident defendant has sufficient minimum contacts with the forum state. *Polar Electro*, 829 F.3d at 1350 (referring to Justice O'Connor's articulation of the stream-of-commerce test in *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112 (1987) and Justice Kennedy's articulation in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011)). In *Asahi*, Justice O'Connor articulated the test as follows:

> The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State. . . . But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112 (citations omitted) (emphasis in original).

Similarly, Justice Kennedy explained in *J. McIntyre* that "the authority to subject a defendant to judgment depends on purposeful availment, consistent with Justice O'Connor's opinion in *Asahi*[.]" 564 U.S. at 885. "As a general rule, the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 877 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum." *Id.* at 882.

The "something more" necessary to demonstrate that a defendant has targeted the forum state includes "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112; *Polar Electro*, 829 F.3d at 1347.

Here, plaintiffs claim that this court has specific personal jurisdiction over AIM "because it conducts business within Oregon and has committed acts of patent infringement in this District by interactively advertising, offering to sell, and selling infringing products via established channels, including its own websites and numerous interactive online marketplace websites, including at least Amazon.com, eBay.com, and Newegg.com." Memo. 6, ECF #29. More specifically, plaintiffs contend:

1) AIM maintains multiple active websites through which it advertises, offers to sell, and sells ink cartridges that infringe the Epson patents, allowing customers, including customers in Oregon, to do business entirely through the websites and directly purchase infringing cartridges. Mem. 8, ECF # 29 (citing Compl. ¶¶ 11-13, ECF #1; Doss Decl. ¶ 9, ECF #30).

2) AIM maintains at least two interactive, transaction-enabled websites, www.advanceimage.com and www.neximaging.com, through which Oregon residents can directly purchase the infringing products. *Id.* at 9 (citing Compl. ¶¶ 11-13, ECF #1; Doss Decl. ¶ 9, ECF #30).

3) AIM's websites each indicate that they sell to consumers in the "contiguous 48 states," it "retains the right to charge additional fees for special requests, and orders outside the contiguous 48 states," and it "will contact the customer prior to shipment if such charges apply." *Id.* at 10 (citing Doss Decl. ¶ 9, ECF #30).

4)  Purchases made through AIM's websites are processed and shipped directly by AIM, no other entity appears in the chain of distribution to the Oregon customer, and the infringing products are shipped directly to such consumers from AIM's address at 1581 Sulphur Spring Road, Baltimore, Maryland 21227.  *Id.* (citing Compl. ¶ 13, ECF #1; Doss Decl. ¶ 8, ECF #30).

5)  The websites both set forth the same phone number "(443) 568-0160" and same email address "sales@neximaging.com" as a means through which customers can purchase the infringing products from AIM.  *Id.* (citing Compl. ¶ 11, ECF #1).

6)  AIM's infringing products are advertised, offered for sale, and sold through its online stores on many third-party active websites doing business in Oregon, including www.amazon.com, www.eBay.com, and www.newegg.com, through which Oregon residents can directly purchase the infringing products, which are shipped directly to such residents.  *Id.* at 11 (citing Compl. ¶¶ 11-13).

These allegations, taken as true on a motion for default judgment,[1] show AIM maintains established distribution channels in Oregon.  Infringing cartridges manufactured by AIM were offered for sale and sold throughout the United States, including Oregon, through AIM's active and interactive websites and numerous interactive online storefronts, including Amazon, eBay, and Newegg, all of which allowed customers to do business entirely through the websites and directly purchase infringing ink cartridges.  These activities present the "something more" needed to satisfy the more stringent articulations of the stream-of-commerce test.  As such, AIM purposefully directs its activities toward Oregon and purposefully avails itself of the privilege of conducting activities within Oregon.

---

[1] "In reviewing a default judgment, this court takes the well-pleaded factual allegations in the complaint as true."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotations omitted)).

Page 6 - ORDER ON PERSONAL JURISDICTION, DEFAULT JUDGMENT, AND PERMANENT INJUNCTION

Furthermore, in patent-infringement suits, the injury is said to occur in the state where infringing sales are made. *See Commissariat a L'energie Atomique v. Chi Mei Optoelectronics Corp.,* 395 F.3d 1315, 1318 (Fed. Cir. 2005) (citing *N. Am. Phillips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994); *Beverly Hills Fan,* 21 F.3d at 1571 ("Economic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there."). Plaintiff Epson Portland Inc. is a corporation organized and existing under the laws of the State of Oregon, with its principal place of business located in Hillsboro, Oregon. Compl. ¶ 8, ECF #1. It is the exclusive licensee for manufacturing ink cartridges under the Epson Patents (described below) in the United States, and is directly injured by AIM's infringing sales. *Id.* Thus, plaintiff Epson Portland Inc. has sustained injury in Oregon.

The second prong of the minimum-contacts test is easily satisfied as this patent-infringement action arises out of and relates to AIM's purposeful shipping of the accused products to residents in Oregon. *See Polar Electro*, 829 F.3d at 1351.

Finally, regarding the third prong, once a plaintiff has carried its burden of establishing the defendant has sufficient minimum contacts in the forum state, the burden shifts to the defendant to prove it would be constitutionally unreasonable to exercise jurisdiction over it. *Burger King*, 471 U.S. at 477. A finding of unreasonableness is generally "limited to the rare situation in which the plaintiff's interest and the state's interests in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568; *Burger King*, 471 U.S. at 477 (requiring a 'compelling case' of unreasonableness). AIM has not appeared in this litigation and therefore cannot meet this burden. Moreover, because plaintiffs' interest in

litigating the suit are to address an injury that occurred in Oregon and because the State of Oregon has an interest in protecting its residents against such injuries, this is not the rare situation in which the exercise of jurisdiction is unreasonable even when minimum contacts exist.

Accordingly, this court has personal jurisdiction as to AIM.

## DEFAULT JUDGMENT AND PERMANENT INJUNCTION

### I.      Findings of Fact

1.      Plaintiff Seiko Epson Corporation ("Seiko Epson") is a corporation organized and existing under the laws of Japan.  Its principal place of business is located at 3-3-5 Owa Suwa-shi Nagano-Ken, 392-8502, Japan.  Seiko Epson is in the business of manufacturing and selling a wide variety of consumer, commercial, and industrial products, including ink cartridges for use with Epson printers.

2.      Plaintiff Epson America, Inc. ("Epson America") is a corporation organized and existing under the laws of the State of California.  Its principal place of business is located at 3840 Kilroy Airport Way, Long Beach, California 90806.  As the North American sales, marketing, and customer service affiliate of Seiko Epson, Epson America is the exclusive licensee of the Epson Patents described below for distributing in the United States ink cartridges that are covered by the Epson Patents.

3.      Plaintiff Epson Portland Inc. ("Epson Portland") is a corporation organized and existing under the laws of the State of Oregon.  Its principal place of business is located at 3950 NW Aloclek Place, Hillsboro, Oregon 97124.  Epson Portland maintains an exclusive license to manufacture ink cartridges in the United States under the Epson Patents described below.

Collectively, Plaintiffs Seiko Epson, Epson America, and Epson Portland are sometimes hereinafter referred to as "Epson" or "Plaintiffs."

4.    Defendant AIM, hereinafter referred to as "AIM" or "Defendant," is a corporation organized and existing under the State of Pennsylvania.  AIM's last known principal place of business is located at 1581 Sulphur Spring Road, Suite 113, Baltimore, Maryland 21227.  AIM has engaged in the business, among others, of manufacturing, offering for sale, and selling in the United States ink cartridges for use with Epson printers.

5.    Defendant has sold within and offered to sell within the United States, including in the State of Oregon, aftermarket ink cartridges for use with Epson printers.

6.    Epson owns all right, title, and interest in, including the right to sue thereon and the right to recover for infringement thereof, the following United States patents:

     a.    United States Patent No. 6,502,917 ("the '917 patent"), which was duly and legally issued to Seiko Epson by the United States Patent and Trademark Office on January 7, 2003; and

     b.    United States Patent No. 8,794,749 ("the '749 patent"), which was duly and legally issued to Seiko Epson by the United States Patent and Trademark Office on August 5, 2014.

The '917 and '749 patents (collectively, the "Epson Patents") all relate generally to ink cartridges for printers.

7.    Epson brought this action against Defendant for infringement of the Epson Patents.

8.    On January 17, 2018, the Clerk entered Default as to Advance Image Manufacturers, Inc.  ECF #21.

9.    Defendant has imported into, sold within, and/or offered to sell within, the United States, including in the State of Oregon, certain aftermarket ink cartridges for use with Epson printers that Epson has alleged infringe at least one claim of one or more of the Epson Patents

Page 9 - ORDER ON PERSONAL JURISDICTION, DEFAULT JUDGMENT, AND PERMANENT INJUNCTION

(hereinafter, the "Accused Products"). A complete list of the Accused Products is attached hereto as "Attachment A" and is incorporated herein by reference. Epson has alleged that the Accused Products all infringe at least one or more claims of one or more of the Epson Patents. More specifically, Epson has alleged that each of the claims of the Epson Patents listed on "Attachment B" hereto is infringed by the Accused Products listed on Attachment B with respect to each such claim.

10.     Defendant has sold 2,581 infringing cartridges from November 4, 2013, through July 27, 2017. But for Defendant's sales of infringing cartridges, Epson would have made such sales. Epson's lost profits for Defendant's infringing sales of the 2,581 infringing ink cartridges is $31,966.20.

11.     Any finding of fact that is deemed to be a Conclusion of Law is hereby adopted as such. Any Conclusion of Law that is deemed to be a finding of fact is hereby adopted as such.

## DISCUSSION

### I.     Default Judgment

Upon entry of default, this court must take the well-pleaded factual allegations of the complaint as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, this court must take the well-pleaded factual allegations of [the complaint] as true."). However, the district court's decision whether to enter a default judgment is a discretionary one. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26)).

In this case, Epson submitted a declaration, exhibits, and a memorandum in support of its request for default judgment. When the *Eitel* factors are considered, they weigh strongly in favor of the court exercising its discretion to enter a default judgment, as discussed below.

## A.    Factor One:  Possibility of Prejudice to Plaintiff

In assessing this factor, courts have considered whether the plaintiff would be without recourse for recovery if the motion for default judgment is not granted. *See, e.g., J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010); *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). That is true here, where plaintiffs have no recourse to obtain damages on its claims other than through this action. Further, due to AIM's absence, "a default judgment is the only means available for compensating Plaintiff for Defendant's violations under . . . the United States Patent Act. If the Court does not enter a default judgment, it will allow Defendant to avoid liability by not responding to Plaintiff's claims." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F.Supp.2d 1049, 1054 (C.D. Cal. 2011) (granting default judgment of patent infringement and granting a permanent injunction against the defendant barring further infringement).

## B.    Factors Two and Three:  Merits of Claims and Sufficiency of Complaint

In the complaint, plaintiffs allege that AIM has infringed and is infringing the Epson Patents "by making, using, importing, offering to sell, and selling in this judicial district and

elsewhere aftermarket ink cartridges that operate with Epson ink jet printers." Compl. ¶¶ 11-13, 16-25, 27-36, ECF #1. AIM has not alleged or provided any evidence regarding the invalidity or enforceability of Epson Patents. Additionally, this court is unaware of any Oregon patent cases that have found the Epson Patents to be invalid, and has no information showing they have been found to be invalid in any relevant International Trade Commission proceedings or any other proceeding. *See* 35 U.S.C. § 282 ("A patent shall be presumed valid."); *see also Myspace, Inc. v. Graphon Corp.,* 672 F.3d 1250, 1259 (Fed. Cir. 2012) ("In section 282 of the Patent Act, Congress created a presumption of validity for an issued patent").

### C.     Fourth Factor:  Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo,* 238 F.Supp.2d at 1176-77; *see also J&J Sports,* 2010 WL 2757106, at *5 ("a large sum of money at stake would disfavor default judgment damages"); *Board of Trustees of Sheet Metal Workers v. Vigil,* No. C 07-01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved").

Here, monetary damages do not weigh against default judgment, as Epson is seeking only a permanent injunction.

### D.     Fifth Factor:  Possibility of Dispute Over Material Facts

In addressing the fifth factor, the court considers the possibility that there is a dispute concerning material facts. As mentioned above, "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo,* 238 F.Supp.2d at 1177. Thus, "[t]he fifth factor … weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Joe Hand Prods. V. Holmes,* No. 2:12–cv–00535–SU, 2015 WL

Page 12 - ORDER ON PERSONAL JURISDICTION, DEFAULT JUDGMENT, AND PERMANENT INJUNCTION

5144297, at *7 (D. Or. Aug. 31, 2015). Otherwise stated, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc. v. Crawford,* 226 F.R.D. 388, 393 (C.D. Cal. 2005).

Here, plaintiffs filed a well-pleaded complaint alleging all the elements necessary to prevail on the claims. Given AIM's failure to defend, there is little possibility of a dispute concerning material facts. *Amini*, 768 F.Supp.2d at 1056 (granting default judgment on plaintiff's patent infringement claim and explaining "[t]he Defendant has not appeared in this action or asserted any defenses. Taking the allegations of the Complaint as true, there is no possibility of a dispute concerning material facts."). Thus, the possibility of a dispute over material facts is low, if it exists at all.

### E.    Sixth Factor:  Excusable Neglect

The sixth factor considers whether the default resulted from excusable neglect. Here, Epson filed its claim on March 16, 2017, and arranged for personal service of a copy of the Summons and Complaint upon AIM's Corporate Representative. Declaration of Richard H. Doss ("Doss Decl.") 2, ECF #16. AIM was served with a copy of the Summons and Complaint on March 24, 2017. ECF #11. Epson then provided, by email and first-class mail, a copy of the Request for Entry of Default and accompanying Declaration to the corporate representatives of AIM. ECF ##15-6. AIM's failure to defend in this litigation— after a year of litigation, and affirmative statements by their corporate representative to "go ahead and default them," and "good luck collecting"— is not the result of any excusable neglect. Doss Decl. ¶ 6, ECF #19.

### F.    Policy Favoring Decisions on the Merits

Factor seven is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, "this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *Joe Hand Promotions, Inc. v. Machuca,* No. 2:13–cv–1228 GEB KJN, 2014 WL 1330749, at *6 (E.D. Cal. Mar. 31, 2014); *see also PepsiCo*, 238 F.Supp.2d at 1177 (noting that the mere existence of FRCP 55(b) indicates that this preference, standing alone, is not dispositive).  Where a defendant has failed to answer a complaint, it "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F.Supp.2d at 1177.  Thus, given that all of the other factors weigh in favor of a default judgment, the seventh factor is not dispositive.

In sum, the *Eitel* factors weigh heavily in favor of entering a default judgment. Accordingly, the court exercises its discretion and enters a default judgment.

## II.    Permanent Injunction

To obtain a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (applying standard four-part test for permanent injunctions "to disputes arising under the Patent Act").  Here, Epson's motion for permanent injunction is granted for the reasons discussed below.

### A.    Epson Has Suffered Irreparable Harm

Epson has established that it has suffered irreparable injury as the result of AIM's past and continuing infringing sales. *See* Compl. ¶¶ 16-25, 27-36, ECF #1. In the complaint, which is taken as true, Epson asserts that AIM made, imported, and sold infringing cartridges, and that this infringement "damaged and will continue to damage Epson irreparably." *Id.*; *see Area 55, Inc. v. Celeras LLC,* CIV. 09-CV-2755-H NLS, 2011 WL 1375307, at *4 (S.D. Cal. Apr. 11, 2011) (relying on the fact that "Plaintiffs' third amended complaint alleges that [the defendant] has infringed and continues to infringe Plaintiffs' patents, and that as a direct result of Defendant's infringement, Plaintiffs have suffered irreparable harm").

Epson and AIM compete in the sale of ink cartridges for use with Epson printers. *See, e.g., Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, CIV. C 03-1431 SBA, 2008 WL 928496, *3 (N.D. Cal. Apr. 4, 2008) ("Courts routinely find irreparable harm, and therefore grant permanent injunctions where, as here, the infringer and the patentee are direct competitors."), *aff'd in part, rev'd in part on other grounds*, 582 F.3d 1288 (Fed. Cir. 2009); *Area 55*, 2011 WL 1375307, at *4 (relying on, *inter alia*, the fact that the patentee and the defaulting infringer were competitors); ECF #1 ¶¶ 18, 29 (identifying the ink cartridges for use with Epson printers purchased from the Defendant); Doss Decl. ¶ 10 (identifying the genuine Epson cartridges that are sold by Epson that correspond to AIM's infringing ink cartridges). Consequently, every infringing sale by the AIM represents a lost sale to Epson and harm to Epson's patent-granted right to exclude.

Epson is prevented from presenting further evidence of harm because AIM has failed to participate in this litigation. *See* Doss Decl. ¶¶ 6-7. Nonetheless, the court may still properly find irreparable harm based on the record before it. *Amini*, 768 F. Supp. 2d at 1057 (finding

irreparable harm and explaining that "[b]ecause Defendant has failed to respond to the Complaint, it is not possible to determine with certainty whether Defendant is continuing to sell the infringing products or, if Defendant has presently stopped, whether it will resume selling the infringing products in the future. However, without the Court's issuance of an injunction, the continued sale of such [infringing products] by Defendant will result in lost sales . . . and would damage the [patentees]. . . .").

Based on Epson's well-pleaded allegations and evidence that AIM sold infringing products for use with Epson printers, the court finds that Epson has suffered irreparable harm.

### B.  Monetary Damages are Inadequate

Monetary damages are inadequate to vindicate Epson's patent rights because a patent grants its owner the right to exclude. *See Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988) ("[B]ecause the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole"). Moreover, "because the parties are direct competitors, monetary damages are not an adequate remedy to compensate Plaintiffs." *Area 55*, 2011 WL 1375307, at *4; ECF #1 ¶¶ 18, 29 (identifying the ink cartridges for use with Epson printers purchased from the Defendant); Doss Decl. ¶ 10 (identifying the genuine Epson cartridges that are sold by Epson that correspond to AIM's infringing ink cartridges). Finally, Epson is unable to adequately determine its monetary damages due to AIM's failure to participate in this action. *See* Doss Decl. ¶¶ 6-7; *see also Area 55*, 2011 WL 1375307, at *4; *Amini*, 768 F. Supp. 2d at 1057.

### C.  Balancing of Hardships Favors the Grant of an Injunction

The balance of hardships also weighs in Epson's favor. Epson, which has established that AIM's cartridges infringe the Epson Patents, should not be punished for AIM's failure to

Page 16 - ORDER ON PERSONAL JURISDICTION, DEFAULT JUDGMENT, AND PERMANENT INJUNCTION

participate in this action. *Area 55*, 2011 WL 1375307 at \*4 (finding that "the balance of the hardship weighs strongly in favor of Plaintiffs because Plaintiffs have suffered irreparable harm from Defendant's infringement, and Defendant has failed to participate in this action and make any showing that a permanent injunction would be harmful to it"). Moreover, if a permanent injunction is not issued, Epson may have to engage in further litigation to protect its rights if AIM infringes again. *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1111 (N.D. Cal. 2009) ("Entry of a permanent injunction . . . will not give rise to any meaningful hardship . . . On the other hand, in the absence of a permanent injunction, [the plaintiff] will be forced to engage in further litigation if [the defendant] infringes its patents again.").

This court is aware of no equities that weigh against granting a permanent injunction. AIM faces "no hardship in refraining from . . . infringement of [Epson's] patents . . . whereas [Epson] faces loss of sales and damage to its reputation." *Amini*, 768 F. Supp. 2d at 1057. Considering the substantial hardship faced by Epson and the lack of any corresponding hardship for AIM, this factor weighs in favor of granting a permanent injunction.

### D.    Public Interest

There is a "strong public policy favoring the enforcement of patent rights" that will be vindicated by such an injunction. *PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). There is also no evidence here that the public would be injured by an injunction preventing further infringement by AIM. Thus, the public interest also weighs in favor of an injunction against AIM.

## CONCLUSIONS OF LAW

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271 et seq.  This court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      This court has personal jurisdiction over the parties.  By failing to appear, defendant has waived any venue challenge, and on that basis, the court finds that venue is proper in this district pursuant to 28 U.S.C. § 1400(b).

3.      Epson has alleged that each of the claims of the Epson Patents listed on Attachment B is infringed by each of the Accused Products listed on Attachment A with respect to each such claim.  Epson has submitted evidence demonstrating its allegations of infringement of the patents set forth in Attachment B.  Defendant has not appeared to contest Epson's allegations or contradict the evidence submitted by Epson, and on that basis, the court finds that the Accused Products infringe the claims of the Epson Patents as set forth in Attachment B.  No determination is made that the Accused Products do not infringe other claims of the Epson Patents or other patents owned or controlled by Epson.

4.      Defendant has not submitted any evidence to demonstrate that the Epson Patents are invalid or unenforceable, the Epson Patents have not been held invalid or unenforceable in this action, proceedings before the International Trade Commission, or any other proceeding, and on that basis, the Court makes the following findings:

        a.      All the claims of the '917 patent are valid and enforceable; and
        b.      All the claims of the '749 patent are valid and enforceable.

5.      This court explicitly orders that the issues of validity, enforceability, and infringement are hereby finally concluded and disposed of and this Judgment bars Defendant from contending in this action or any other proceeding that the Accused Products and other

products that are no more than colorably different therefrom do not infringe the claims of the Epson Patents set forth in Attachment B.

6.    This Judgment shall finally conclude and dispose of this litigation as to the parties to this Default Judgment, and this Judgment shall be entitled to issue and claim preclusion effect.

**IT IS HEREBY FOUND, ORDERED, ADJUDGED, AND DECREED THAT:**

1.    Defendant and its officers and directors, agents, servants, employees, attorneys, distributors, and affiliates, who are in active concert or participation with, through, or under them and who receive actual notice of this judgment by personal service or otherwise, are hereby permanently enjoined from the sale of the Accused Products or any other products no more than colorably different therefrom.  Defendant and its officers and directors, agents, servants, employees, attorneys, distributors, and affiliates, who are in active concert or participation with, through, or under them and who receive actual notice of this judgment by personal service or otherwise, are also hereby permanently enjoined from any other acts that directly or indirectly infringe any of the claims of the Epson Patents set forth in Attachment B, and from causing, inducing or contributing to the infringement of any of the claims of the Epson Patents set forth in Attachment B by others.

2.    This Judgment shall become null and void on the expiration date of the last to expire of the '917 and '749 patents.  This Judgment shall not apply with respect to any claim of an intellectual property right that has expired or been found or adjudicated invalid or unenforceable by a court of competent jurisdiction, provided that such finding or judgment has become final and non-reviewable.

3.      This Court retains exclusive jurisdiction of this action for the purpose of ensuring compliance with this Judgment.

4.      This Judgment shall finally conclude and dispose of all claims and counterclaims of Plaintiffs against Defendant and Defendant against Plaintiffs with prejudice.

5.      Each party shall bear its own costs and attorney's fees.

6.      Final Judgment shall be entered hereto, forthwith, without further notice.

The Clerk is directed to enter this Final Default Judgment and Permanent Injunction forthwith.

IT IS SO ORDERED.

Dated this _____ day of October, 2018.

Michael W. Mosman
Chief United States District Judge

**Attachment A**
Advance Image Manufacturers, Inc. Default Judgment and Permanent Injunction
*Seiko Epson Corp., et al. v. Advance Image Manufacturers, Inc.*, 3:17-CV-00425-YY (D. Or)

## List of Accused Products

| T02002 | T02003 | T02004 | T02731 | T02732 | T02733 |
|--------|--------|--------|--------|--------|--------|
| T02734 | E0781  | E6762  | E6763  | E6764  |        |

**Attachment B**
Advance Image Manufacturers, Inc. Default Judgment and Permanent Injunction
*Seiko Epson Corp., et al. v. Advance Image Manufacturers, Inc.*, 3:17-CV-00425-YY (D. Or)

## Claim 9 of U.S. Patent No. 6,502,917

| T02002 | T02003 | T02004 | E0781 |
|--------|--------|--------|-------|

(including any other products that are no more than colorably different)

## Claim 1 of U.S. Patent No. 8,794,749

| T02002 | T02003 | T02004 | T02731 | T02732 | T02733 |
|--------|--------|--------|--------|--------|--------|
| T02734 | E0781  | E6762  | E6763  | E6764  |        |

(including any other products that are no more than colorably different)